IN RE the COMMITMENT OF Joseph LOMBARD:

STATE of Wisconsin, Petitioner-Respondent,

v.

Joseph A. LOMBARD, Respondent-Appellant.†

Court of Appeals

No. 00–3318. —*Oral argument January 29, 2003.—*
*Decided July 31, 2003.*

2003 WI App 163

(Also reported in 669 N.W.2d 157.)

---

† Petition to review granted 10-21-03.

887

888

On behalf of the respondent-appellant, the cause was submitted on the briefs of and oral argument by *David R. Karpe* of *Karpe Law Office*, Madison.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Eileen W. Pray*, assistant attorney general, and *James E. Doyle*, attorney general. There was oral argument by *Eileen W. Pray*.

Before Dykman, Deininger and Lundsten, JJ.

¶ 1. DEININGER, J. Joseph Lombard appeals a judgment that determined him to be a sexually violent person and committed him for treatment under WIS. STAT. ch. 980 (1999–2000).[1] He also appeals two orders denying his post-judgment motions. He claims error in the following: (1) the trial court's failure to give his requested instruction on "lack of volitional control"; (2) the unconstitutionality of 1999 Wis. Act 9 which removed the court's authority to grant immediate supervised release; (3) the trial court's instruction to the jury that sexually violent persons are eligible for supervised release; (4) the lack of sufficient evidence to establish the grounds for his commitment; and (5) a violation of his Fifth Amendment rights stemming from the State's use at trial of statements he made during a pre-petition psychological evaluation.

¶ 2. We conclude that the issue of a specific instruction on lack of volitional control has been decided adversely to Lombard by the Wisconsin Supreme Court, as has a portion of his constitutional challenge to WIS. STAT. § 980.06. We reject his separation of powers argument on the latter issue, as well as his claim that the court erred in giving a curative instruction regarding a ch. 980 committee's eligibility for release. We also conclude there was sufficient evidence for the jury to find that Lombard suffers from a mental disorder that makes it substantially probable he will engage in further acts of sexual violence. Finally, we conclude that our decision in *State v. Zanelli*, 223 Wis. 2d 545, 589 N.W.2d 687 (Ct. App 1998) (*Zanelli II*), disposes of Lombard's Fifth Amendment claim regarding state-

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

ments he made during a psychological evaluation conducted for the purposes of ch. 980.

¶ 3. Accordingly, we affirm the appealed judgment and order.

## BACKGROUND

¶ 4. Lombard was convicted in 1981 of first-degree sexual assault and five counts of second-degree sexual assault. Several days prior to his January 2000 mandatory release date, the State petitioned to have him committed under WIS. STAT. ch. 980 as a sexually violent person. The State's allegations were tried to a jury, which returned a verdict finding Lombard to be a sexually violent person. The trial court entered judgment on the jury's verdict and committed Lombard to the Department of Health and Family Services for institutional care and treatment in a secure mental health facility.

¶ 5. Lombard filed motions after verdict seeking a new trial on the grounds that the trial court had unduly restricted his cross-examination of the State's expert witness, erroneously excluded certain evidence, and erred in instructing the jury. He also challenged the constitutionality of the 1999 amendment to WIS. STAT. § 980.06 which eliminated the option of immediate supervised release for WIS. STAT. ch. 980 committees, and he requested a new trial "in the interest of justice." The court denied Lombard's motions, and he commenced this appeal. At his request, we remanded the case to the circuit court to permit Lombard to file an additional post-judgment motion asserting ineffective assistance of trial counsel. The circuit court denied the motion without a hearing.

¶ 6. Additional facts relating to the specific issues Lombard raises on appeal are included in the analysis which follows.

## ANALYSIS

### I.

¶ 7. Lombard's first claim is that the trial court erred in refusing his request to modify the pattern jury instructions regarding the elements that the State must prove in order to establish that he is a sexually violent person. A trial court may exercise broad discretion in deciding whether to give a requested jury instruction. *See State v. McCoy*, 143 Wis. 2d 274, 289, 421 N.W.2d 107 (1988). If the instructions given adequately cover the law applied to the facts, we will not find error in refusing special instructions even though, if given, they, too, would not be erroneous. *See State v. Amos*, 153 Wis. 2d 257, 278, 450 N.W.2d 503 (Ct. App. 1989).

¶ 8. Relying on *Kansas v. Crane*, 534 U.S. 407 (2002), Lombard asked the court to insert the following italicized language into Wis JI—Criminal 2502 (1999):

> A petition has been filed alleging that Joseph Lombard is a sexually violent person. A sexually violent person is one who has been convicted of a sexually violent offense and is dangerous to others because he currently has a mental disorder *that impairs his volitional control to the degree he cannot control his behavior,* that makes it substantially probable that the person will engage in future acts of sexual violence.
>
> . . . .
>
> "Mental disorder" means a condition affecting the emotional or volitional capacity that predisposes a

893

person to engage in acts of sexual violence. *In other words, the mental disorder must impair his volitional or emotional control to the degree that he cannot control his behavior.* Mental disorders do not include merely deviant behaviors that conflict with prevailing societal standards. Not all persons who commit sexually violent offenses can be diagnosed as suffering from a mental disorder, nor are all persons with a mental disorder predisposed to commit sexually violent offenses. You are not bound by medical opinions, labels, or definitions.

The court denied Lombard's request, instructing the jury as quoted above but without the italicized language. Lombard contends this was reversible error.[2]

¶ 9. The State responds, and we agree, that the supreme court has rejected the precise argument based on *Crane* that Lombard advances here. The court concluded in *State v. Laxton,* 2002 WI 82, 254 Wis. 2d 185, 647 N.W.2d 784, *cert. denied,* 537 U.S. 1114 (2003), that "proof that due to a mental disorder it is substantially probable that the person will engage in acts of sexual violence necessarily and implicitly includes proof

---

[2] Lombard also requested a four-question verdict requiring the jury to make separate findings on each required element (conviction for a sexually violent offense, petition filed within ninety days of release, presence of a mental disorder, and dangerousness to others because of a substantial probability of engaging in future acts of sexual violence). Lombard's proposed verdict question regarding the presence of a mental disorder also included language relating to impairment of "emotional or volitional control." The court opted for a single-question verdict asking the jury to determine whether "Joseph A. Lombard is a sexually violent person." Lombard challenges only the court's refusal to give his requested modified instruction. He does not separately address the court's use of a single-question verdict.

that such person's mental disorder involves serious difficulty in controlling his or her sexually dangerous behavior. WISCONSIN STAT. ch. 980, therefore, satisfies due process requirements." *Laxton*, 254 Wis. 2d 185, ¶ 23. More specifically, the supreme court determined that a jury instruction similar to the one given in this case, which informed jurors that "[m]ental disorder means a . . . condition affecting the emotional or volitional capacity that predisposes the person to engage in acts of sexual violence," satisfied the due process concerns discussed in *Crane. Id.*, ¶ 27.

¶ 10. We are of course bound by *Laxton*, and we apply its holding here to conclude that the court did not err in rejecting Lombard's proffered instruction and in giving the one it did. *See Cook v. Cook*, 208 Wis. 2d 166, 189, 560 N.W.2d 246 (holding that only the supreme court has the power to overrule, modify or withdraw language from a previous supreme court opinion).

## II.

¶ 11. WISCONSIN STAT. § 980.06 currently provides that, if someone is found to be a sexually violent person, the initial commitment order "shall specify that the person be placed in institutional care." Prior to the enactment of 1999 Wis. Act 9, however, the statute permitted the committing court to "specify either institutional care or supervised release" in the initial order of commitment. *See* WIS. STAT. § 980.06(2)(b) (1997–98). Lombard argues that the 1999 amendment removing the possibility for immediate supervised release renders the statute unconstitutional because it violates both due process and the separation of powers. We reject both assertions.

¶ 12. The due process challenge to the amended statute is easily disposed of. We have previously concluded that the amendment enacted in 1999 Wis. Act 9 does not violate the principles of equal protection. *See State v. Williams*, 2001 WI App 263, 249 Wis. 2d 1, 637 N.W.2d 791, *review denied,* 2002 WI 111, 256 Wis. 2d 63, 650 N.W.2d 840 (Wis. Jul. 26, 2002) (No. 00–2899). More recently, the supreme court held in *State v. Rachel*, 2002 WI 81, 254 Wis. 2d 215, 647 N.W.2d 762, that the amendments to ch. 980 do not violate substantive due process. We are bound by both of these decisions.

¶ 13. Lombard's separation of powers argument also lacks merit. He contends that by eliminating the circuit court's authority to order immediate supervised release of a Wis. Stat. ch. 980 committee, the legislature has attempted to exercise judicial authority and has thus usurped "judicial power." Lombard cites no authority, however, for the proposition that courts possess the inherent or exclusive power to determine the settings in which mental health treatment will be provided to persons under commitment, and we are aware of none.

¶ 14. The legislature has granted circuit courts the authority in civil commitment proceedings to designate whether initial treatment is to be provided on an inpatient or outpatient basis, *see* Wis. Stat. § 51.20(13)(a)3, just as it previously did under Wis. Stat. § 980.06 (1997–98). This does not mean, however, that the legislature was required to delegate this determination to the courts. We agree with the State that determining dispositions in mental health commitments is similar to doing so in criminal prosecutions, which is an area of "shared powers" between the legislative, executive and judicial branches. Lombard has

advanced no reason why the legislature may not "determine the scope" of a court's discretion in setting the initial disposition in a WIS. STAT. ch. 980 commitment, just as it is authorized to do with respect to a "sentencing court's discretion." *See State v. Horn*, 226 Wis. 2d 637, 646, 594 N.W.2d 772 (1999).

## III.

¶ 15. A defense expert testified at trial that sex offender risk-assessment instruments employed by probation officers and correctional staff omit certain important factors that, in his view, should be considered. He went on to say that "at this level, you know, where we are looking at commitment for life because of a sex offense, I think you have to also consider some of the other powerful factors that are not included in that—in those instruments." The State objected to the witness's statement regarding a "commitment for life" as being an improper and incorrect reference to the disposition in proceedings under WIS. STAT. ch. 980. It requested that the court give a curative instruction.

¶ 16. The trial court agreed with the State and, over defense objection, gave the following curative instruction:

> During the testimony yesterday by Dr. Lodl, there was a misstatement in his testimony as to what the law is in that Dr. Lodl testified regarding a commitment for life. That is a misstatement of the law. The Court will advise you that under Sec. 980.06(1) of the Wisconsin statutes, the law is that if a court or jury determines that the person who is the subject of a petition under Sec. 980.02 is a sexually violent person, the court shall order the person committed to the custody of the Department of Health and Family Services for control, care and treatment until such time as the person is no longer a

897

sexually violent person. This can include institutional or supervised release with opportunities for periodic examination, with opportunities on a regular basis to petition the court for supervised release or for a petition for discharge either by the Secretary of the Department of Health and Family Services or by the person committed.

¶ 17. Lombard argues that the instruction "gave the jury a false sense that an S[exually] V[iolent] P[erson] finding could be met by a wide range of judicial disposition, which was simply not true." He contends that when the court chose to instruct jurors regarding WIS. STAT. ch. 980 dispositions, it was "obliged to tell them that if they found Lombard was an SVP, the court would commit him forthwith to institutional care." Lombard does not assert that the court's curative instruction misstated the law, only that it was incomplete and prejudicially so.

¶ 18. We agree with the State, and with Lombard's tacit admission, that the curative instruction correctly stated the law. We also conclude that the instruction properly served to correct any misimpression jurors might have gained from the expert's testimony that a "commitment for life" was at issue in the instant proceedings. As the supreme court has explained, a "trial court has broad discretion when instructing a jury . . . . If the overall meaning communicated by the instructions was a correct statement of the law, no grounds for reversal exist." *Fischer v. Ganju*, 168 Wis. 2d 834, 849–50, 485 N.W.2d 10 (1992) (citations omitted). We conclude that the challenged curative instruction did not "probably" mislead the jury, *see id.*, and accordingly, the court did not erroneously exercise its discretion in giving the quoted instruction.

898

## IV.

¶ 19. Lombard's next challenge is to the sufficiency of the evidence to support the jury's verdict that he is a sexually violent person. Specifically, he claims there was "no foundation for a finding of dangerousness because the diagnosis of sexual sadism is so doubtful." He points out that only one of four experts who testified at trial concluded Lombard was a sexual sadist who presented a substantial probability of engaging in future acts of sexual violence.

¶ 20. It is axiomatic, however, that jurors are not required to base their determinations of the weight and credibility of evidence on the number of witnesses who testify in favor of or against the existence of a disputed fact. In fact, jurors are expressly instructed to not base their conclusions simply on the number of witnesses appearing for one side. *See* Wis JI—Criminal 190.[3] We thus reject Lombard's suggestion that because three defense experts contradicted the State's lone expert, the evidence was insufficient for the jury to find him to be a sexually violent person.

¶ 21. Moreover, our standard for reviewing the sufficiency of the evidence to support a jury's verdict " 'is not whether this court or any of the members thereof are convinced [that Lombard is a sexually violent person] beyond reasonable doubt, but whether this court can conclude the trier of facts could, acting

---

[3] "The weight of evidence does not depend on the number of witnesses on each side. You may find that the testimony of one witness is entitled to greater weight than that of another witness or even of several other witnesses." Wis JI—Criminal 190. The trial court gave this instruction.

reasonably, be so convinced by evidence it had a right to believe and accept as true.' " *State v. Poellinger*, 153 Wis. 2d 493, 503–04, 451 N.W.2d 752 (1990) (citation omitted). We conclude that the standard is met on this record. The State's expert, a psychologist who evaluated Lombard for the purpose of determining whether proceedings under Wis. Stat. ch. 980 should be instituted, diagnosed Lombard with sexual sadism, a mental disorder which the expert testified rendered Lombard dangerous and substantially likely to reoffend within the meaning of ch. 980. Lombard does not argue that this testimony was inherently incredible or incredible as a matter of law. Accordingly, the jury had a right to believe and accept the State's expert's testimony and opinions as true, even if Lombard presented conflicting testimony from other experts. *See State v. Kienitz*, 227 Wis. 2d 423, 438–41, 597 N.W.2d 712 (1999).

¶ 22. We conclude that, as in *State v. Curiel*, 227 Wis. 2d 389, 597 N.W.2d 697 (1999), where only one of three experts testified that the respondent was much more likely than not to reoffend, the testimony of the State's expert is sufficient to support the jury's verdict. *See id.* at 420. The evidence at trial, "viewed most favorably to the state" and to the verdict, is not so lacking in probative value and force that no trier of fact, acting reasonably, could have found the criteria for commitment beyond a reasonable doubt. *See Poellinger*, 153 Wis. 2d at 507.

V.

¶ 23. Lombard's final claim of error is that the trial court erred in permitting statements he made to the State's evaluating psychologist regarding his past sexual offenses to be used against him in the Wis. Stat.

ch. 980 commitment proceedings.[4] He asserts that the examiner did not advise him of his right to remain silent as required under *Miranda v. Arizona*, 384 U.S. 436 (1966), and thus he did not knowingly and voluntarily waive his right to silence when he gave information to the psychologist about his past offenses. The psychologist in turn used these statements to conclude that Lombard was substantially likely to reoffend and so testified before the jury. Lombard notes that WIS.

---

[4] The State used Lombard's statements during his pre-petition interview in two ways: its expert witness considered them in arriving at his diagnosis of sexual sadism, and some statements were related to the jury during the expert's testimony and cross-examination. Documents showing that Lombard had committed a number of rapes between 1978 and 1980 and describing the details of those offenses, including victim descriptions of them, were admitted into evidence by stipulation of the parties. Thus, it is not the fact of his prior sexual offenses that Lombard claims should have been excluded but the descriptions of his motivations and sensations during them, which were used to support the State examiner's diagnosis and prediction of dangerousness.

We also note that Lombard did not object at trial to the admission of the State's psychologist's report and testimony. He moved for post-verdict relief on the grounds that he had not given informed consent for his examination interview. The trial court denied this motion, as well as Lombard's subsequent motion alleging ineffective assistance based on his counsel's failure to timely object to the report and testimony at issue. Because the question of whether Lombard was entitled to *Miranda* warnings at the commencement of his pre-petition examination by a State psychologist is at the heart of Lombard's claim of ineffective assistance of counsel, we address that question directly. Because we conclude he was not so entitled, he suffered no prejudice as a result of his counsel's failure to seek exclusion of the psychologist's report and testimony on *Miranda* grounds.

STAT. § 980.05(1m) provides that persons subject to ch. 980 proceedings are entitled to all constitutional rights available to a criminal defendant and, at trial, to all of a criminal defendant's rights relating to the admission of evidence.[5] He claims that the right to a *Miranda* warning comes within these rights, and that if a *Miranda* violation occurs, a person's statements cannot be admitted at trial in the State's case in chief.

¶ 24. Lombard also notes that we have recognized that the State may not comment at trial on the fact that a person subject to WIS. STAT. ch. 980 proceedings chose not to speak to an examining psychologist or psychiatrist. *State v. Zanelli*, 212 Wis. 2d 358, 370–72, 569 N.W.2d 301 (Ct. App. 1997) (*Zanelli I*). He contends that a necessary corollary to our holding in *Zanelli I* is the right to prevent the State's use of any statements made to an examiner if the requirements of *Miranda* were not met at the time of the examination interview. Finally, Lombard points to *Estelle v. Smith*, 451 U.S. 454, 466 (1981), as establishing that Fifth Amendment safeguards apply when a psychiatrist interviews an in-custody criminal defendant, and he argues that the same safeguards should apply to persons subject to ch. 980 proceedings.

¶ 25. The State argues both that Lombard was not entitled to a *Miranda* warning at the commencement of his pre-petition psychological interview and that, if he was so entitled, the examiner provided the

---

[5] WISCONSIN STAT. § 980.05(1m) provides: "At the trial to determine whether the person who is the subject of a petition . . . is a sexually violent person, all rules of evidence in criminal actions apply. All constitutional rights available to a defendant in a criminal proceeding are available to the person."

"functional equivalent" of the *Miranda* warning.[6] We agree with the State's first assertion and therefore do not address the second.

¶ 26. Lombard is correct that *Zanelli I* stands for the proposition that a person subject to commitment proceedings under Wɪs. Stat. ch. 980 has "a constitutional right against self-incrimination," which includes prohibiting the State from commenting at a ch. 980 trial on a respondent's "refusal to be interviewed." *State v. Zanelli*, 223 Wis. 2d 545, 569–70, 589 N.W.2d 687 (Ct. App. 1998) (*Zanelli II*). It does not necessarily follow, however, that a person who is being evaluated for the potential filing of a ch. 980 petition is entitled to a *Miranda* warning before being interviewed. Although part of our analysis in *Zanelli II* suggests that incriminating statements made to a police officer in violation of *Miranda* cannot be admitted at a ch. 980 trial,[7] we also

---

[6] The State's psychologist testified that he informs those whom he interviews for the purposes of Wɪs. Stat. ch. 980 that their participation in the evaluation process is voluntary and that they may refuse to answer any or all questions put to them. A form acknowledgment informs persons so evaluated that "you have the right not to participate in the examination or to answer any of the questions posed to you, but this refusal will be used as part of the evaluation."

[7] Zanelli argued that a statement he had made to a police officer in 1977, "in which Zanelli graphically described his sexual conduct with several boys," was wrongly admitted into evidence at his Wɪs. Stat. ch. 980 trial because the State had not shown "that he had knowingly and intelligently waived his *Miranda* rights." *State v. Zanelli*, 223 Wis. 2d 545, 569–70, 589 N.W.2d 687 (Ct. App. 1998) (*Zanelli II*). Based on the officer's testimony at the *Miranda* hearing, we concluded that "Zanelli was not in custody when he gave the 1977 statement; therefore *Miranda* warnings were not required." *Id.* at 569.

noted that statements made regarding "matters for which Zanelli had already been convicted . . . could not subject Zanelli to future criminal prosecution." *Zanelli II*, 223 Wis. 2d at 568. We therefore concluded that

> [t]he fact that such statements can be used in a ch. 980 . . . case does not mean that the statements could incriminate him in a pending or subsequent criminal prosecution as ch. 980 is a civil commitment proceeding, not a criminal proceeding. Accordingly the statements were admissible.

*Id.* (citation omitted).

¶ 27. Lombard does not argue that anything he told the State's examiner could "incriminate him in a pending or subsequent criminal prosecution." *See id.* We conclude, therefore, that the cited passage from *Zanelli II*, applied to the present facts, means that Lombard was not entitled to suppress the statements he made to the examining psychologist on the grounds that he was not given *Miranda* warnings before the interview. The purpose of the examiner's interview was to evaluate Lombard for the purpose of a potential "civil commitment proceeding, not a criminal proceeding," *id.*, and the examiner was not required to comply with *Miranda's* dictates. Had the examiner, inadvertently or otherwise, elicited statements from Lombard which could subject him to future criminal prosecution, those statements might well be suppressible in a future prosecution under *Estelle*. We do not address whether any statements made to the examiner that would subject Lombard to future criminal prosecution may be excluded from a trial under Wis. Stat. ch. 980, as that question is not presented by the facts and arguments before us.

¶ 28. We acknowledge that our present conclusion and those in *Zanelli I* and *II* regarding a WIS. STAT. ch. 980 respondent's rights under the Fifth Amendment and *Miranda* may appear contradictory. It is clear that a "person who is the subject of [a ch. 980] petition" has a statutory right to "[r]emain silent," WIS. STAT. § 980.03(2)(b), but we have concluded that this right "plainly does not apply" to a pre-petition examination. *Zanelli I*, 212 Wis. 2d at 370. We have also concluded, however, that the State may not comment at a ch. 980 trial upon a respondent's "refus[al] to participate in [a] formal evaluation made prior to the filing of a [ch. 980] petition." *Id.* at 369. We conclude today that the State may use at a ch. 980 trial any statements made by the respondent to a pre-petition State examiner that could not subject the respondent to future criminal prosecution, regardless of whether the respondent was warned that the State may use those statements at a ch. 980 trial. *See Zanelli II*, 223 Wis. 2d at 568.

¶ 29. Were we writing on a clean slate, we might navigate this terrain differently, but we are not and feel compelled by the analysis in *Zanelli II* to reach the result we do here. *See Cook*, 208 Wis. 2d at 189–90. The supreme court may wish to address our conclusions and to clarify the interaction between WIS. STAT. § 980.05(1m) and *Miranda* in the pre-petition examination setting.

## CONCLUSION

¶ 30. For the reasons discussed above, we affirm the appealed judgment and orders.

*By the Court.*—Judgment and orders affirmed.