In re the Commitment of Joseph A. Lombard:

State of Wisconsin, Petitioner-Respondent,

v.

Joseph A. Lombard, Respondent-Appellant.†

Court of Appeals

*No. 03–0407. Submitted on briefs December 5, 2003.—Decided February 26, 2004.*

2004 WI App 52

(Also reported in 678 N.W.2d 338.)

† Petition to review denied 5-17-04.

On behalf of the respondent-appellant, the cause was submitted on the briefs of *David R. Karpe*, Madison.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Christopher G. Wren*, asst. attorney general, and *Peggy A. Lautenschlager*, atty. general.

Before Dykman, Vergeront and Lundsten, JJ.

¶ 1. VERGERONT, J. Joseph Lombard appeals the judgment entered upon a jury verdict that he was still a sexually violent person under ch. 980 and the order denying his petition for discharge. He contends the court erred in refusing to give an instruction on the effect of a discharge in response to the jury's inquiry and in responding with insufficient specificity to the jury's inquiry about an inappropriate telephone call made by Lombard. We conclude the trial court did not erroneously exercise its discretion in either instance and we therefore affirm.

## BACKGROUND

¶ 2. Lombard was convicted in 1981 of one count of first-degree sexual assault and five counts of second-degree sexual assault and sentenced to forty years in prison with an additional twenty years of probation.[1] In 2000, he was adjudicated a sexually violent person under ch. 980 and committed to the Wisconsin Resource Center for treatment. Following a reexamination in 2001 as required by WIS. STAT. § 980.07 (2001–02),[2] Lombard petitioned for discharge under WIS. STAT. § 980.09(2)(a).

¶ 3. At the trial before a jury, Lombard presented the testimony of James Harasymiw, the psychologist

---

[1] The judgment of conviction is not in this record; these facts are taken from the 2001 reexamination.

[2] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

who had conducted the reexamination.[3] Harasymiw testified he had initially recommended that Lombard be granted supervised release with monitoring. However, after Lombard's attorney asked him to take into account the fact that Lombard had about forty years of supervision remaining on parole and probation for the convictions, Harasymiw changed his recommendation to discharge. He explained that in light of that already-existing period of supervision, supervised release prior to discharge appeared unnecessary. Harasymiw also testified that he later made another recommendation for discharge without regard to any supervisory status that Lombard might be subject to as a result of his convictions. In support of that recommendation, Harasymiw stated that Lombard was at a low risk for future sexual reoffending and no longer met the test of a substantial probability of reoffending.

¶ 4. The State presented the testimony of psychologist Deborah Collins, who opined that Lombard was much more likely than not to commit further acts of sexual violence if he were discharged. In the course of her testimony on Lombard's sexual history, she stated that during his initial period of incarceration he made an unauthorized telephone call. The call was to a staff nurse, who was not available, and Lombard asked the person on the telephone "something about getting together or were they attractive." Collins described this as "unacceptable behavior between an inmate and a staff member" and said he was sanctioned for it. This was the extent of her testimony on the telephone call.

---

[3] Lombard also presented the testimony of other witnesses, but their testimony is not relevant to the issues he raises on appeal.

533

¶ 5. The verdict question submitted to the jury was: Is Joseph A. Lombard still a sexually violent person? The court instructed the jury, consistent with WIS. STAT. § 980.01(7),[4] that in order to find that he was, it must find by clear and convincing evidence three facts: (1) Lombard had been convicted of a sexually violent offense (which the jury was directed to accept as fact based on the stipulation of the parties); (2) he had a mental disorder, meaning a condition affecting the emotional or volitional capacity that predisposes a person to engage in acts of sexual violence; and (3) he was dangerous to others because he had a mental disorder that created a substantial probability that he would engage in future acts of sexual violence.

¶ 6. During deliberations, the jury sent a message to the court with these questions:[5]

(1) What happens if he is "discharged" and deemed *not* much more likely than not to engage in future acts of

---

[4] WISCONSIN STAT. § 980.01(7) reads as follows:

"Sexually violent person" means a person who has been convicted of a sexually violent offense, has been adjudicated delinquent for a sexually violent offense, or has been found not guilty of or not responsible for a sexually violent offense by reason of insanity or mental disease, defect or illness, and who is dangerous because he or she suffers from a mental disorder that makes it substantially probable that the person will engage in acts of sexual violence.

[5] The note contained a third question: "Why is he asking to be released in the middle of the Sand Ridge program? What set this current motion into action?" The court gave this response: "This should not be a matter of concern to you in answering the question in the verdict." There is no issue on appeal concerning this question.

sexual violence? Meaning—will he be on parole or have some form of supervision or might he be free with no supervision?

(2) When did he make the inappropriate phone call to a female staff member of the correctional institution (Fox Lake or Oshkosh or Sand Ridge Institution)?

¶ 7. The court conferred with the attorneys for the parties on what responses to give. With respect to the first question, defense counsel asked the court to instruct the jury that Lombard would be on parole. He acknowledged no one knew what the conditions would be, but, he argued, it was known Lombard would be on a combination of parole and probation for forty years and this fact was in evidence. The court stated this proposed response was not appropriate because it would be instructing the jury on what the facts were, which a court should not do. Also, the court stated, as a matter of law the jury was not to be concerned with what would happen as a result of its verdict. The court proposed giving the following answer: "You are instructed that you are not to be concerned with what will happen based on your answer to the verdict question. The Court will enter judgment based on your verdict." Defense counsel responded that if the court was not going to mention the evidence on parole to the jury, he preferred that nothing be said about the consequences of its decision and that the jurors simply be instructed to rely on their collective memory of the evidence. The court decided to give the response it had proposed.

¶ 8. With respect to the second question, defense counsel asked the court to instruct the jury that Lombard made the call when he was at Fox Lake. Defense counsel stated he believed there was testimony to this effect and it was an important point, because Lombard would be prejudiced if the jury believed he made the call

535

at Sand Ridge or at Oshkosh, later stages of his incarceration. Counsel for the State thought the telephone call did occur when Lombard was at Fox Lake and thought this was in Dr. Collins' testimony, but he asked the court to simply instruct the jury to rely on their collective memories because he did not want to emphasize a particular fact. The court agreed with the State, explaining that the jurors had been told they should pay careful attention to the testimony, they would not have a transcript of the testimony available during deliberations, they would have to rely on their memories, and they could take notes to help refresh their memories. The court indicated it was not appropriate to instruct the juries on particular evidence they could not remember. The court therefore gave this response: "You are instructed to rely on your notes and your collective memory."

¶ 9. The jury answered "yes" to the verdict question, with one dissent. The court entered judgment on the verdict, adjudging Lombard still to be a sexually violent person and denying a discharge.

## DISCUSSION

¶ 10. On appeal Lombard contends the trial court erroneously exercised its discretion in answering the two questions. According to Lombard, in response to the first question the court should have told the jury he would remain under the supervision of DOC if he were discharged; and in response to the second question the court should have either told the jury the telephone call occurred at Fox Lake or read the relevant testimony to the jury.

¶ 11. As Lombard recognizes, how a trial court responds to a jury's inquiry is committed to that court's

discretion. *Kohlhoff v. State*, 85 Wis. 2d 148, 159, 270 N.W.2d 63 (1978). We affirm discretionary decisions if the court examined the relevant facts, applied the correct legal standard, and used a rational process to reach a reasonable result. *State v. Edmunds*, 229 Wis. 2d 67, 74, 598 N.W.2d 290 (Ct. App. 1999).

## Jury Inquiry on Supervision after Discharge

¶ 12. Lombard argues that whether Lombard would be released unsupervised if he were discharged was crucial to the determination the jury was asked to make on his future dangerousness and, therefore, the jury had a right to know that he would be under DOC's supervision. This information would not have required the jury to speculate, Lombard emphasizes, because it was certain he would be supervised, and he was not asking that the jury be told about the conditions of supervision, which he acknowledges were not known. Therefore, Lombard asserts, the court acted unreasonably when it did not provide this information to the jury in response to its inquiry.

¶ 13. We are not persuaded by Lombard's argument. Lombard acknowledges there is no requirement in the case law or statutes that the court must instruct the jury on the consequences of discharge. In contrast, for example, Wis. Stat. § 971.165(2) requires the court to instruct the jury that if it finds a defendant not guilty by reason of insanity, the defendant will be placed in an appropriate institution unless the court determines the defendant would not pose a danger to himself/herself or others if released under conditions imposed by the court. In Lombard's reply brief, he points out that, prior

to the enactment of § 971.165(2),[6] the court in *State v. Shoffner*, 31 Wis. 2d 412, 428–29, 143 N.W.2d 458 (1966), expressed a preference for juries to be informed that a defendant would not be released upon a finding of not guilty by reason of insanity. There the court stated:

> [T]he ordinary rule [is] that a jury is not to be informed of the effect of its answers upon the rights and liabilities of the parties. But we think an exception is justified in this difficult field because of the possibility that if the jurors are ignorant of the hospitalization required by [the] statute and believe that a finding of not guilty by reason of insanity will free the defendant, they may be biased against such [a] finding.

*Id.* at 428–29. The court added, however, that the failure to give the instruction was not prejudicial error. *Id.*; *see also Treglown v. DHSS*, 38 Wis. 2d 317, 326–27, 156 N.W.2d 363 (1968) (describing *Shoffner* as "strongly recommending" that an instruction be given on what would happen to the defendant upon a finding of not guilty by reason of insanity). To the extent Lombard is asking this court to express a preference that a jury hearing a petition for discharge under ch. 980 be given an instruction regarding the consequences of its verdict, similar to the preference expressed in *Shoffner*, that request is more appropriately addressed to the supreme court.

¶ 14. The death penalty cases that Lombard refers to are not apt analogies. *See, e.g., Skipper v. South Carolina*, 476 U.S. 1, 5 (1986) (stating that the sentencing authority, judge or jury, may consider a defendant's past conduct as indicative of probable future behavior).

---

[6] WISCONSIN STAT. § 971.165(2) was enacted by 1987 Wis. Act 86, § 1.

The jury's role in this proceeding was not to decide what sentence or other disposition was appropriate for Lombard but, rather, to answer the factual question of whether he was still a sexually violent person.

■

¶ 15. Because there is no case law or statutory requirement that the court advise a jury in a proceeding under ch. 980 of the consequences of a discharge, the court did not apply an incorrect standard of law. Therefore, the issue is whether the court made a reasonable decision based on the relevant facts. We conclude that it did.

¶ 16. The trial court here reasonably decided that evidence of whether Lombard would be supervised as a result of his convictions was not relevant to the question the jury had to answer—whether Lombard was still a sexually violent person.[7] The answer to that question, as the jury was instructed, depended upon whether Lombard had a mental disorder that created a substantial probability he would engage in future acts of sexual violence. The jury was not asked to decide whether there were conditions that would make Lombard less dangerous if he were discharged.

¶ 17. As support for his argument that the proper exercise of discretion in this case required instructing the jury that Lombard would be under the supervision of DOC if he were discharged, Lombard refers us to a recent decision on his appeal from his initial commitment, *State v. Lombard*, 2003 WI App 163, ¶ 18, 266 Wis. 2d 887, 669 N.W.2d 157. There a defense expert

[7] Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Wis. Stat. § 904.01.

testified that, because "we are looking at commitment for life," other factors not included in the typical risk assessment instruments should be considered. *Id.*, ¶ 15. The State objected to the reference to "commitment for life" and asked for a curative instruction, which the court gave over Lombard's objection. *Id.*, ¶¶ 15, 16. The court instructed the jury that "commitment for life . . . is a misstatement of the law," and that WIS. STAT. § 980.06 provides that when persons are determined to be sexually violent, they are committed to the custody of the Department of Health and Family Services for control, care, and treatment until they are no longer sexually violent; the instruction also explained the opportunities for supervised release, periodic reexaminations, and petitions for discharge. *Id.*, ¶ 16. Lombard argued on appeal that this instruction was incomplete because it did not advise the jury that, if it found Lombard to be a sexually violent person, the court "would commit him forthwith to institutional care." *Id.*, ¶ 17. We concluded that the challenged instruction did not mislead the jury on the law and was a proper means of correcting any misimpression the jury might have had from the defense expert's reference to "commitment for life." *Id.*, ¶ 18.

¶ 18. That decision does not lend support to Lombard's argument in this case. In *Lombard* we did not decide that a trial court was obligated to instruct the jury on the consequences of a determination under ch. 980. Rather, we concluded a trial court acted properly in using an instruction to correct inaccurate testimony on the consequences of a determination. In this case, there was no inaccurate information provided the jury that needed correction.

¶ 19. Lombard also asserts the jury had a right to know he would be supervised so it "could have confi-

dence in its finding without distraction by doubts concerning social risks." But the jury's "confidence in its finding" properly derives from the evidence relevant to the question the jury is asked to answer, not from knowledge of what happens as a result of one answer it might choose.

¶ 20. Finally, Lombard appears to take the position that, even though the court is not obligated to instruct the jury on the consequences of a discharge as a routine matter, when a jury asks this question a court acts unreasonably in not providing it. However, a court is not obligated to provide a jury with information solely because the jury believes it is important to its decision. Rather, it is the court's role to exercise its discretion and decide whether it is appropriate for the jury to have the information it requests, and that is what the court did here.

¶ 21. We conclude the trial court properly exercised its discretion in deciding not to give the jury information about Lombard's parole or probation supervision but instead to instruct the jury not to concern itself with what would happen as a result of its verdict.

Jury Inquiry on Inappropriate Telephone Call

¶ 22. Lombard argues that, in response to the second inquiry, the trial court could have chosen either to tell the jury that the inappropriate telephone call was made at Fox Lake or to read the relevant portions of the transcript to the jury, but the choice to do neither was an erroneous exercise of discretion. Lombard's argument is based both on the fact that there was no dispute between the parties on where the telephone call was made and on the significance of this fact. Lombard

explains the significance in this way: prior to his arrest for the sexual assaults he was making obscene telephone calls, and if the jurors thought the inappropriate call Collins described occurred at one of the two institutions where he was incarcerated after he left Fox Lake, which had more intensive treatment programs, they would likely infer the treatment was ineffective.

¶ 23. The State points out in response that the transcript of the trial testimony does not show an unambiguous link between the inappropriate telephone call and Fox Lake as the location. As noted above, when recounting Lombard's history of sexual conduct, Dr. Collins described the telephone call as made during his "initial period of incarceration," but she did not describe its location. Later in her testimony, when asked to describe the treatment Lombard had undergone, she referred to Fox Lake as the location of "his first episode of treatment." The State concedes that the jury could have inferred from these two pieces of testimony that the telephone call occurred at Fox Lake, but, the State asserts, rereading these portions of the transcript would not have answered its question but would simply have presented the jury with the same ambiguous testimony it had already heard.[8]

¶ 24. The State also points out that, while Collins' report did identify Fox Lake as the location of the telephone call and this report was a trial exhibit received into evidence, the jury did not have any exhibits during its deliberations. The prosecutor and defense

[8] While the State and Lombard each refer us to other references to treatment Lombard received at Fox Lake, in Collins' testimony and in the testimony of other witnesses, we agree with the State that none are relevant to establishing whether the telephone call occurred while Lombard was incarcerated at Fox Lake.

counsel initially agreed that the jury should not receive any exhibits but, if the jury requested an exhibit, they would discuss it then. The court agreed, and emphasized that it had specifically received the various reports and records into evidence only to the extent they were testified to, and they could not go to the jury unless everything not testified to were redacted. During deliberations, the jury asked to see "all or any exhibits[,] [s]pecifically Sand Ridge." The court and both counsel again agreed the jury should not be provided any exhibits.

■

¶ 25. Lombard's position is apparently that, because it is undisputed the telephone call occurred at Fox Lake, it doesn't matter whether the evidence presented to the jury showed this. We do not agree. Simply because a fact may be undisputed does not mean that a party is entitled to have a jury instructed on that fact. It is true that parties may stipulate to facts and, if the court accepts the stipulation, the court then instructs the jury to accept that fact as true—as happened in this case regarding the stipulation and instruction that Lombard had been convicted of an offense involving sexual violence. However, the State did not agree to stipulate to the fact that the telephone call had occurred at Fox Lake; while counsel for the State believed it had occurred there, he expressly objected to the jury being instructed on that.

■

¶ 26. Because there was no stipulation on this fact, an analysis of the court's response to the jury's question must begin with the evidence presented to the jury. "When, during its deliberations, a jury poses a question regarding testimony that has been presented, the jury has a right to have that testimony read to it,

subject to the discretion of the trial judge to limit the reading." *Kohlhoff*, 85 Wis. 2d at 159. Although a court may, in the exercise of its discretion, choose to summarize the testimony instead of having the transcript of the testimony read when a jury requests clarification of the testimony, the supreme court has advised that the better practice is to restrict such clarification to a reading of the testimony. *Id.* at 160.

¶ 27. We consider first whether the trial court erroneously exercised its discretion in not reading the transcript to the jury. On appeal defense counsel refers both to Collins' testimony that the telephone call occurred in Lombard's "initial period of incarceration" as well as to various other references to Fox Lake as an indication of what the trial court should have read to the jury. However, defense counsel did not ask the trial court to read any testimony in response to the question but asked the court to instruct the jury that the telephone call occurred at Fox Lake. We agree with the State's assessment that there was no direct and unambiguous testimony that the telephone call occurred at Fox Lake. However, to the extent the jury's primary concern was whether the telephone call occurred earlier or later in the period of Lombard's incarceration, a reading of Collins' testimony that the telephone call "occurred during Lombard's initial period of incarceration" would have directly and unambiguously addressed that concern. But defense counsel did not ask the trial court to read this (or any testimony) to the jury. We will not overturn a discretionary ruling on a ground not brought to the trial court's attention. *State v. Fischer*, 147 Wis. 2d 694, 703, 433 N.W.2d 647 (Ct. App. 1988).

¶ 28. We next consider whether, given the evidence presented to the jury, the trial court erroneously exercised its discretion in not instructing the jury that the telephone call occurred at Fox Lake. As we have already stated, the testimony did not directly and unambiguously show this. On appeal Lombard is apparently of the view that, because this information was in an exhibit that was admitted into evidence, the trial court could have and should have instructed the jury on this information even though the jury had not seen the exhibit or heard this testimony. We do not agree. The trial court made it clear to both parties when neither objected to admission of the other's exhibits into evidence that it was admitting them only to the extent they were testified to. The court repeated this during the discussion on sending exhibits to the jury room. There is therefore no room for doubt that the information in Collins' report that was not in her testimony had not been presented to the jury. Lombard's argument that the court should nonetheless have instructed the jury that the telephone call occurred at Fox Lake is at bottom simply another way of arguing that the court should instruct the jury on a fact without a stipulation from the party. We have already explained he is not entitled to such an instruction.

¶ 29. We conclude the trial court did not erroneously exercise its discretion in answering the second inquiry of the jury as it did. Lombard did not ask the court to read any portion of the trial testimony. He did ask the court to instruct the jury that the telephone call occurred at Fox Lake, but there was no evidence that had been presented to the jury that directly and unambiguously established that fact, and there was no stipulation from the State that the court should so instruct

the jury. The trial court therefore acted reasonably in declining to give this instruction and instead instructing the jurors to "rely on [their] notes and [their] collective memory."

*By the Court.*— Judgment and order affirmed.

¶ 30 LUNDSTEN, J. *(concurring)*. I join all of the majority's decision. I write separately to add a reason why the trial court's response to the jury inquiry about an inappropriate telephone call made by Lombard should be affirmed.

¶ 31. During deliberations, the jury sent out the following question: "When did [Lombard] make the inappropriate phone call to a female staff member of the correctional institution (Fox Lake or Oshkosh or Sand Ridge Institution)?" An exhibit "received into evidence" by the trial court, but never presented to the jury, indicated that the phone call had been made while Lombard was at Fox Lake. The majority explains that one of Lombard's arguments is that "because this information was in an exhibit that was admitted into evidence, the trial court could have and should have instructed the jury on this information even though the jury had not seen the exhibit or heard this testimony." Majority at ¶ 28. The majority's analysis leaves out the most obvious reason this argument lacks merit: evidence that is not presented to a jury during the evidentiary phase of a trial is not evidence for purposes of jury deliberations. Absent a stipulation by the parties that the jury could be told the information, Lombard's request during the jury deliberation phase of the trial was simply a tardy attempt to present evidence to the jury.