COURT OF APPEALS
DECISION
DATED AND FILED

August 21, 2019

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2018AP1311-CR**

STATE OF WISCONSIN

Cir. Ct. No. **2016CF230**

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

AARON M. WIGMAN,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Walworth County: KRISTINE E. DRETTWAN, Judge. *Affirmed*.

Before Neubauer, C.J., Reilly, P.J., and Gundrum, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1　PER CURIAM.　A jury found Aaron M. Wigman guilty of two counts of making threats to law enforcement officers, contrary to WIS. STAT. § 940.203(2) (2017-18).[1]　He appeals from the judgment of conviction and from the order denying his motion for postconviction relief.　We affirm.

¶2　Two Delavan police officers responded to a call that Wigman was loudly spouting racially charged rants at a bar.　They issued him a municipal disorderly conduct citation and took him to his mother's house for the night.

¶3　After the incident, Wigman made four expletive-laced Facebook posts.[2]　One was a photograph of a person with a rifle in his lap.　A second said:

> Next time a fukn pig fucks with me I sure hope he has bulletproof pants on … cuz Ima cut them fuckers down at the thighs … bleed out slow you fukn peicces of trash.　Im quick on my feet and a pretty great shot so I hope the next NASTY FUKN PIG who fuks with me is a notch above my level cuz otherwise his kids wont know their daddy anymore… For REAL

A third said, "Death to all WALWORTH COUNTY POLICE FUKN PEICES OF TRASH."　The final post read:

> Arrested [redacted] … SERIOUSLY WTF … DELAVAN PD FIND SOMETHING BETTTER TO DO THAN WALK THRU A BAR IN DARIEN AND ARREST A GUY FOR ALLEGEDLY SAYIN THE WORD "NIGGA".　Cuz first off ..... I lived in the city for 8 years and most of my acquaintances were of the colored type, and if the word NIGGA comes out my mouth its only in a typical conversation with no offensiveness intended or taken.　And yes it does come out from time to time to time to time to time lol!!!!!!　Its really funny how I could be sitting in a

---

[1]　All references to the Wisconsin Statutes are to the 2017-18 version unless noted.

[2]　Misspellings, punctuation errors, and upper case lettering appear in Wigman's original posts.

trap house and say nigga 30 times in 10 mins and the 10 black people around me wouldn't think a second thought about it ... but if a rotten CRACKA PIG FROM DELAVAN PD OR WALWORTH COUNTY NASTY FUCKING PEICES OF GARBAGE THAT THEY ARE, SEE MY FACE (PROFILE ME, CUZ OF MY NAME AND MY PAST) AND HEAR A WORD THAT THEY THINK OFFENDS (BOTH WHITE PIGS TONIGHT BY THE WAY)), decide to arrest me and give me a $500 DC ticket. Lmfao ... talk about fuckin profiling man seriously so pissed you can't imagine. However ...... when we go to court ... they'll have an uphill battle of trying to pull in witnesses (seeing as there were abssolutly ZERO black people in the bar lol) and I have yet to meet a Caucasian who takes personal offense to the word NIGGA Allegedly being spoken. And of course I will come fully loaded. SERIOUSLY GET OFF MY ASS FUKN DELAVAN AND WALWORTH....NEXT GUY TO FUK WITH ME IS GUNA MEET THE BUSINESS END OF A 1911......FOR REAL IM STRAIGHT TIRED OF ALL OF THIS THIS PROFILING YOU PEICES OF FUKN GARBAGE. TRY ME MUTHA FUKAS.....YOU GUNA MAKE A BITCH A WIDOW FOR REAL, YOUR DECISION, NOT MINE! But I'm done ... can't wait till you ignorant FUKAS attempt to fuck with me again ….. To be continued .... cuz you know these loser fucks have nothing better to do ....  Ill be on the national news soon just watch haha

¶4    Wigman's theory of defense was that his posts did not amount to a "true threat" and thus were constitutionally free speech. He requested that the trial court modify WIS JI CRIMINAL 1240D, the standard jury instruction for WIS. STAT. § 940.203(2), to include the five factors set forth in **State v. Perkins**, 2001 WI 46, ¶31, 243 Wis. 2d 141, 626 N.W.2d 762, for assessing if a defendant's statement is a true threat. The court refused, reasoning that altering the instruction would be potentially confusing to the jury. The jury found him guilty on both counts.

¶5    Postconviction, Wigman sought to have his conviction overturned. He argued that the trial court erred in not modifying the jury instruction to include the **Perkins** factors. He also argued that WIS. STAT. § 940.203(2) was

3

unconstitutional as applied because there is no requirement that a more specific scienter element be proved or found. The court denied his motion after a hearing. He appeals.

¶6      Wigman first argues that the trial court erred by not granting his request to modify the jury instruction defining "true threat." He suggests that the jury could not properly understand the concept of "true threat" outside the context of the five *Perkins* factors.

¶7      The trial court "has broad discretion in deciding whether to give a requested jury instruction." *State v. Anderson*, 2014 WI 93, ¶16, 357 Wis. 2d 337, 851 N.W.2d 760 (citations omitted). While we will not overturn its decision regarding a requested jury instruction absent an erroneous exercise of discretion, we independently review whether the given instruction accurately states the law as applied to the facts of the case. *Id.* Even though a requested instruction would not have been erroneous, we will not find error in refusing it if the instruction as given adequately covers the law applied to the facts. *State v. Lombard*, 2003 WI App 163, ¶7, 266 Wis. 2d 887, 669 N.W.2d 157.

¶8      "Only a 'true threat' is constitutionally punishable under statutes criminalizing threats." *Perkins*, 243 Wis. 2d 141, ¶17. A true threat is a statement that, based on the totality of the circumstances, a speaker reasonably would foresee that a listener reasonably would interpret "as a serious expression of a purpose to inflict harm, as distinguished from hyperbole, jest, innocuous talk, expressions of political views, or other similarly protected speech." *Id.*, ¶29. "[B]ad taste … is not a crime," however. *United States v. Dutcher*, 851 F.3d 757, 761 (7th Cir. 2017). A "true threat" is a "constitutional term of art" that describes

"a specific category of unprotected speech." ***State v. Douglas D.***, 2001 WI 47, ¶31, 243 Wis. 2d 204, 626 N.W.2d 725 (citation omitted).

¶9     ***Perkins*** teaches that courts should consider five factors when determining whether a statement is a "true threat" or protected free speech: (1) how the recipient and others reacted to the statement; (2) whether it was conditional; (3) "whether it was communicated directly to its victim"; (4) whether its maker had made prior similar statements to the victim; and (5) whether the victim had reason to believe the statement's maker "had a propensity to engage in violence." ***Perkins***, 243 Wis. 2d 141, ¶31.  The test balances the need to protect free speech with the need to proscribe speech that is not protected. ***Id.***, ¶29.  The test is an objective standard from the perspectives of both the speaker and the listener and is assessed using an objective reasonable-person standard. ***Id.***  The speaker need not have the ability to carry out the threat. ***Id.***

¶10     Wigman argues that sufficient evidence supported modifying the instruction with the five ***Perkins*** factors:  (1) No recipient of his Facebook posts reacted with violence, and neither police officer was directly targeted to receive any of the posts; (2) the rhetoric, if bellicose, was hypothetical and conditional and did not threaten imminent violence; (3) he did not communicate directly with the officers through his posts; in fact, the two officers were steered to access them only by others who had seen the posts; (4) he had not made previous similar statements about violent acts toward the officers; and (5) given his relatively compliant behavior at his arrest, the officers had no reason to believe he had a propensity to engage in violence.

5

¶11    While the trial court did not add the **Perkins** factors, it modified the standard instruction by incorporating language from footnote two of the pattern jury instruction, which quotes **Perkins**, 243 Wis. 2d 141, ¶31:

> A true threat is a statement that a speaker would reasonably foresee that a listener would reasonably interpret as a serious expression of a purpose to inflict harm as distinguished from hyperbole, jest, innocuous talk, expressions of political views or other similarly protected speech. It is not necessary that the speaker have the ability to carry out the threat. In determining whether a statement is a true threat, the totality of the circumstances must be considered.

The court included additional language from **Perkins**, instructing the jury to "consider the full context of the statement, including all relevant factors that might affect how the statement could reasonably be interpreted." **Id.**

¶12    In arguing that the **Perkins** factors be included, Wigman himself acknowledged that the proposed modification was "kind of long[-]winded" and "could be confusing." We agree. Even if Wigman's proposed instruction was appropriate, the instruction that the court gave defining true threat adequately stated the law. The court did not erroneously exercise its discretion.

¶13    Wigman also argues that his convictions violate the First Amendment because the trial court instructed the jury to assess whether his statements were true threats under an *objective* standard. The constitutionality of a statute, as it applies to particular facts, is a question of law that we review de novo. *See* **State v. Baron**, 2009 WI 58, ¶10, 318 Wis. 2d 60, 769 N.W.2d 34. An objective standard requires the jury to determine whether a reasonable person making the statement would foresee that a reasonable person hearing the statement would interpret it as a serious expression of intent to do harm. Wigman claims

that the First Amendment requires a *subjective* standard, that is, that the speaker must have intended that the statement be a threat or would be viewed as one.

¶14     The cases Wigman cites that advance a subjective standard address "true threat" in a statutory, not constitutional, context. *See, e.g., **Elonis v. United States***, ___ U.S. ___, 135 S. Ct. 2001, 2009-11 (2015); ***Dutcher***, 851 F.3d at 762. We thus are bound by our state supreme court's decision in ***Perkins***, which makes clear that a true threat is determined using an objective reasonable person standard:  "A true threat is a statement that a speaker would reasonably foresee that a listener would reasonably interpret as a serious expression of a purpose to inflict harm." ***Perkins***, 243 Wis. 2d 141, ¶29.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5.