IN RE the Commitment of Joseph LOMBARD:

STATE OF WISCONSIN, Petitioner-Respondent,

v.

Joseph A. LOMBARD, Respondent-Appellant-Petitioner.

Supreme Court

*No. 00–3318. Oral argument March 12, 2004.—Decided July 1, 2004.*

2004 WI 95

(Also reported in 684 N.W.2d 103.)

541

ABRAHAMSON, C.J., dissents.
BRADLEY, J., joins.
SYKES, J., took no part.

For the respondent-appellant-petitioner there were briefs by *David R. Karpe,* Madison, and oral argument by *David R. Karpe.*

For the petitioner-respondent the cause was argued by *Warren D. Weinstein,* assistant attorney general, with whom on the brief was *Peggy A. Lautenschlager,* attorney general.

¶ 1. N. PATRICK CROOKS, J. Petitioner Joseph A. Lombard (Lombard) seeks review of a court of appeals' decision, *State v. Lombard,* 2003 WI App 163, 266 Wis. 2d 887, 669 N.W.2d 157, affirming a circuit court decision that rejected Lombard's contention that his Fifth Amendment[1] rights were violated. The circuit court rejected Lombard's motion for a new trial, stating that the pre-petition interview process was sufficiently explained to him prior to his interview with the State evaluator. Lombard appealed, and the court of appeals affirmed.

¶ 2. We conclude that Lombard was not entitled to *Miranda v. Arizona,* 384 U.S. 436 (1966) warnings prior to his pre-petition evaluation with the State's psychologist in regard to whether a ch. 980 petition should be filed. Wisconsin Stat. § 980.05(1m) (1999–2000)[2] plainly contains the language "at the trial." The plain language of the statute leads to the conclusion that the legislature intended that such constitutional rights would apply at Lombard's ch. 980 trial. Thus, Lombard did not have the right to *Miranda* warnings during his pre-petition interview with a State

---

[1] The Fifth Amendment to the United States Constitution states, in relevant part, "[no person] shall be compelled in any criminal case to be a witness against himself . . . ." Correspondingly, Article I, § 8(1) of the Wisconsin Constitution states, in relevant part, "[no person] may be compelled in any criminal case to be a witness against himself or herself."

[2] All references to Wisconsin Statutes are to the 1999–2000 edition. Wisconsin Stat. § 980.05(1m) provides, in relevant part: "At the trial to determine whether the person who is the subject of a petition under s. 980.02 is a sexually violent person, all rules of evidence in criminal actions apply. All constitutional rights available to a defendant in a criminal proceeding are available to the person."

psychologist. Because Lombard was not entitled to the warnings,[3] we conclude that counsel's performance was not deficient, and, therefore, Lombard's claim for ineffective assistance of counsel fails.

## I

¶ 3. On March 4, 1981, Lombard was convicted of one count of first-degree sexual assault with concealed identity and five counts of second-degree sexual assault arising out of his assaults of eight women in the Cumberland, Wisconsin area between July 1978 and March 1980. Lombard was sentenced to a total of 40 years in prison for five sexual assaults and 20 years of probation for a sixth sexual assault. Lombard was imprisoned from 1980 until March 1992, at which time he was released on parole. However, Lombard's parole was revoked two and one-half years later, and he was returned to prison.

¶ 4. In late 1999, Lombard neared his mandatory release date. In order to determine whether a ch. 980 petition should be filed in Lombard's case, the State sent Anthony Jurek Ph.D., a psychologist from the Wisconsin Department of Corrections, to interview Lombard. Jurek interviewed Lombard from December 1–3, 1999, at Columbia Correctional Institution where Lombard was serving his sentence. On the first day of the interview, Jurek advised Lombard of the procedures involved in the ensuing evaluation and, after engaging in discourse with Lombard in order to ascertain his comprehension of the evaluation process, presented Lombard with a form entitled Chapter 980 Participation. The form stated as follows:

---

[3] While Lombard appears to insist that all of the *Miranda v. Arizona,* 384 U.S. 436 (1966) rights are applicable to ch. 980 respondents, he chiefly focuses on the right to remain silent.

The purpose of this examination is to assess your appropriateness for commitment under Chapter 980 of the Wisconsin State Statutes concerning the commitment of sexually violent persons. You have the right not to participate in the examination or to answer any of the questions posed to you, but this refusal to answer will be used as part of the evaluation. Nothing during the evaluation will be confidential and it may be repeated in testimony or written reports. A report will be written concerning your potential commitment based on whatever relevant information may be obtained from your records, psychological testing and clinical interview, whether or not you choose to participate in the process.

By signing below, you hereby acknowledge that the above information has been fully explained to you.[4]

---

[4] We note that, as indicated by the State at oral argument, the abovementioned form is no longer used during pre-petition interviews. Without objection, members of the court were provided with the Wisconsin Department of Corrections form presently being utilized. The applicable form states, in relevant part:

> Prior to conducting a psychological assessment and evaluation, including an interview, Dr. [insert name] advised me of the following:
>
> The purpose of the evaluation is to assess whether or not I meet the requirements for commitment under Chapter 980, the Sexually Violent Persons Law, which provides for potential lifelong commitment for treatment.
>
> I have the right to not participate in the examination and assessment. I may refuse to answer any questions posed to me in the form of direct interview or through the administration of psychological testing.
>
> Your decision regarding participation in the interview cannot be used against you.

¶ 5. Lombard signed and dated the form on December 1, 1999.

¶ 6. During the interview with Jurek, Lombard discussed the sexual assaults that he had committed, including his thoughts on them at the time of the interview. Lombard also talked about the different treatment programs he had participated in while imprisoned.

¶ 7. Jurek ultimately concluded that Lombard was a sexually violent person who fit the diagnostic criteria for sexual sadism. Jurek also concluded that Lombard had a personality disorder with antisocial features. Based on his assessment of Lombard, Jurek recommended that ch. 980 proceedings be commenced in Lombard's case. The State began ch. 980 proceedings and, at the probable cause hearing before the circuit court, the court found that there was probable cause to believe that Lombard was suffering from a mental

> Nothing said during the evaluation would be confidential and might be repeated in testimony or written report.
>
> The examiner would be writing a report concerning potential commitment under WSS Chapter 980 based on whatever relevant information the examiner could obtain through review of any and all records pertaining to my sexual offense history, whether or not I agree to participate in the evaluation process. This includes any and all Presentence Investigations completed as part of my criminal offense history.

We agree with the dissent that the new form correctly explains an individual's decision regarding participation in a pre-petition evaluation interview. It clearly states that the decision regarding participation cannot be used against the individual. *See* dissent, ¶ 74.

disorder. The court also found that there was a substantial likelihood that he would engage in acts of sexual violence in the future.

¶ 8. The issue of whether Lombard should be committed as a sexually violent person was tried before a jury beginning on October 16, 2000. At the trial, three expert witnesses testified for Lombard. Jurek was the sole expert witness for the State. Jurek was the only witness to diagnose Lombard as a sexual sadist and conclude that Lombard was substantially likely to reoffend. On October 20, 2000, the jury found Lombard to be a sexually violent person. As a result of the jury's finding, Lombard was committed to an institution.

¶ 9. Lombard filed a notice of motions and motions after verdict relating to the State's use of Lombard's statements during Jurek's interview. Lombard contended that his cross-examination of Jurek was improperly restricted. Lombard further asserted that he should have been allowed to cross-examine Jurek regarding the inconsistencies between the statements attributed to Lombard in Jurek's report and victim testimony regarding their interactions with Lombard during the assaults. Lombard also contended that he did not give informed consent to be interviewed by Jurek during the pre-petition evaluation. Lombard requested that the court set aside that jury's verdict and, in the interest of justice, order a new trial. After a hearing, the court denied these motions.

¶ 10. Lombard then appealed from the finding that he was a sexually violent person, from the order committing him, and from the denial of his post-verdict motions. At Lombard's request, the court of appeals remanded the matter to the circuit court for a determination of whether Lombard received ineffective assistance of counsel at trial. Lombard then filed a motion

547

for a new trial, alleging that he had received ineffective assistance of counsel at trial, because his counsel had failed to object to the admission of Lombard's statements to Jurek, and because his counsel had stipulated that no police reports or transcripts of victim statements would be allowed in the jury room during deliberations. Lombard also requested an evidentiary hearing.

¶ 11. The Dane County Circuit Court, Judge Robert A. DeChambeau presiding, denied Lombard's request for an evidentiary hearing and his request for a new trial. The circuit court concluded that Lombard's Fifth Amendment rights were not violated because he was presented with, and signed, an advisement form prior to the interview. The court noted that the evaluation process was explained to Lombard, and Lombard was told that he had a right not to participate in the evaluation if he so chose. The court noted that Lombard was also informed that Jurek would consider a refusal to participate when reviewing the evaluation.

¶ 12. Lombard appealed the judgment declaring him to be a sexually violent person and committing him under ch. 980. Lombard also appealed two orders denying his post-judgment motions. Lombard asserted that his Fifth Amendment rights were violated because the State used, at trial, statements Lombard made to Jurek during the pre-petition psychological evaluation.[5]

---

[5] Lombard asserted other errors on appeal to the court of appeals, including: (1) the circuit court failed to give the jury his requested instruction regarding "volitional control;" (2) the unconstitutionality of 1999 Wis. Act 9, which removed the court's authority to grant immediate supervised release; (3) the circuit court's instruction to the jury that sexually violent persons are eligible for supervised release; and (4) lack of

¶ 13. With respect to the issue involving Lombard's alleged Fifth Amendment violation, Court of Appeals Judges David G. Deininger, Charles P. Dykman, and Paul Lundsten concluded that Lombard was not entitled to a *Miranda* warning before being evaluated by a State psychologist, since any statements Lombard made about his past crimes could not subject him to future prosecution. The court of appeals relied on a portion of the *State v. Zanelli* (*Zanelli II*), 223 Wis. 2d 545, 589 N.W.2d 687 (Ct. App. 1998) opinion, which stated:

> The fact that such statements can be used in a ch. 980 . . . case does not mean that the statements could incriminate him in a pending or subsequent criminal prosecution as ch. 980 is a civil commitment proceeding, not a criminal proceeding. Accordingly, the statements were admissible.

*Lombard,* 266 Wis. 2d 887, ¶ 26 (citation omitted).

¶ 14. The court of appeals noted that its holding in this case may appear to conflict with *State v. Zanelli* (*Zanelli I*), 212 Wis. 2d 358, 569 N.W.2d 301 (Ct. App. 1997) and *Zanelli II.* The court explained:

> We acknowledge that our present conclusion and those in *Zanelli I* and *II* regarding a Wis. Stat. ch. 980 respondent's rights under the Fifth Amendment and *Miranda* may appear contradictory. It is clear that a "person who is the subject of [a ch. 980] petition" has a statutory right to "[r]emain silent," Wis. Stat. § 980.03(2)(b), but we have concluded that this right "plainly does not apply" to a pre-petition examination. *Zanelli I,* 212 Wis. 2d at 370. We have also concluded, however, that the State may not comment at a ch. 980

sufficient evidence to establish grounds for his commitment. However, we do not discuss these issues further since they are not the subject of this review.

trial upon a respondent's "refus[al] to participate in [a] formal evaluation made prior to the filing of a [ch. 980] petition." *Id.* at 369.

*Lombard,* 266 Wis. 2d 887, ¶ 28.

¶ 15. The court of appeals ultimately concluded that, regardless of whether the respondent was warned that his statements could be used by the State at his ch. 980 trial, the State could introduce statements a respondent made to a State psychologist during a prepetition interview provided that such statements would not subject the respondent to future criminal prosecutions. *Id.* Since the court concluded that a *Miranda* warning was not required, it held that Lombard did not suffer any prejudice as a result of his counsel's failure to object to the psychologist's testimony and report. *Id.,* ¶ 23, n. 4. Thus, the court denied Lombard's ineffective assistance of counsel claim.

## II

¶ 16. We now consider whether a person such as Lombard is entitled to receive *Miranda* warnings prior to being interviewed by a State evaluator in regard to whether a ch. 980 petition should be filed. We recognize that the crux of Lombard's claim rests on his assertion that he received ineffective assistance of counsel. However, it is first necessary to determine whether Lombard was entitled to receive such warnings, before we may evaluate whether counsel's assistance was ineffective due to his failure to object at trial to the admission of Lombard's statements to the State evaluator. We will address the issue of whether Lombard received ineffective assistance of counsel in a subsequent section of this opinion.

**[1]**

¶ 17. In considering whether a ch. 980 respondent is entitled to receive *Miranda* warnings prior to a pre-petition interview with a state evaluator, we must analyze Wis. Stat. § 980.05(1m). Statutory interpretation is a question of law, which we review de novo. *State v. Williams*, 198 Wis. 2d 516, 525, 544 N.W.2d 406 (1996). Nevertheless, this court benefits from the analyses of the circuit court and the court of appeals. *Landis v. Physicians Ins. Co.*, 2001 WI 86, ¶ 13, 245 Wis. 2d 1, 628 N.W.2d 893.

¶ 18. The purpose of statutory interpretation is to give effect to the plain meaning of the words in the statute. *State ex rel. Kalal v. Circuit Court*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. "We assume that the legislature's intent is expressed in the statutory language." *Id.*, ¶ 44.

**[4–8]**

¶ 19. When interpreting a statute, we first must examine its plain language. *Id.*, ¶ 45. *State v. Delaney*, 2003 WI 9, ¶ 13, 259 Wis. 2d 77, 658 N.W.2d 416. If the statute's language is clear and unambiguous, we will apply that language to the present case using intrinsic sources such as scope, context, and purpose, if necessary. "(S)cope, context, and purpose are perfectly relevant to a plain-meaning interpretation of an unambiguous statute as long as the scope, context, and purpose are ascertainable from the text and structure of the statute itself, rather than extrinsic sources, such as legislative history." *Kalal*, 271 Wis. 2d 633, ¶ 47. Extrinsic sources are not consulted unless the language of a statute is determined to be ambiguous. *Id.*, ¶ 49. A

statute is ambiguous when reasonable persons can interpret a statute in multiple ways. *Williams,* 198 Wis. 2d at 526.

¶ 20. Lombard asserts that, pursuant to Wis. Stat. § 980.05(1m), all constitutional rights available to criminal defendants are available to ch. 980 respondents. The only exception, Lombard contends, is where the legislature has made a specific provision that conflicts with the constitutional rights of criminal defendants. In that scenario, Lombard concedes that the dictates of ch. 980 would control the scope of a respondent's rights.

¶ 21. Lombard contends that the United States Supreme Court in *Dickerson v. United States,* 530 U.S. 428 (2000), stated that *Miranda* was a constitutional rule applicable to criminal defendants in custody. Since these are constitutional rights that criminal defendants possess, Lombard asserts that this court should conclude that ch. 980 respondents have these rights pursuant to Wis. Stat. § 980.05(1m). While other jurisdictions may not require suppression for *Miranda* violations under sex predator laws, Lombard points out that this is because those jurisdictions do not have the equivalent to § 980.05(1m), which guarantees that respondents have the same rights as criminal defendants, unless specified by the legislature.

¶ 22. Lombard asserts that criminal defendants have a right to remain silent when interviewed by doctors on behalf of the State, and *Zanelli I* established that a ch. 980 respondent has a right to remain silent. Moreover, Lombard states that *Zanelli II* does not control in this case because Lombard, unlike Zanelli, was in custody when he gave his statement. Thus, in *Zanelli II,* Lombard asserts that there would have been

no grounds for suppression under *Miranda* or *Dickerson,* even if it were a criminal matter.

¶ 23. Finally, Lombard asserts that Jurek's interaction with Lombard was interrogation, and Lombard's responses were incriminating under *Miranda.* Lombard states that the Fifth Amendment applies when a psychiatrist interviews an in-custody defendant; thus, a different rule should not apply simply because Lombard was a ch. 980 respondent who was interviewed by a state psychologist. Lombard contends that he was compelled to speak to Jurek, because Jurek told him that if he failed to do so it would be used against him during the evaluation process. This was worse than failing to provide a *Miranda* warning, Lombard argues, because Jurek's statement was inherently coercive.

¶ 24. The State contends that, without a statute stating otherwise, the Fifth Amendment does not apply in the context of civil commitments. The State posits that two questions must be answered to determine if the Fifth Amendment is applicable in this case: (1) is the statement offered in a subsequent criminal or civil proceeding? and (2) was the testimony compelled? With respect to the first prong, the State asserts that, in *Allen v. Illinois,* 478 U.S. 364 (1986), the United States Supreme Court held that the Fifth Amendment did not apply to commitment proceedings,[6] and statements admitted in a subsequent criminal proceeding are permissible as long as they are not compelled. With respect to the second prong, the State contends that, unless

---

[6] In *Allen v. Illinois,* 478 U.S. 364 (1986), the petitioner in that case was found to be a sexually dangerous person under the Illinois Sexually Dangerous Persons Act. Although the dissent cites to *Allen* for support, we note that the only support it gathers for its position is from the dissenters in *Allen. See* dissent, ¶ 71.

some type of compulsion is uncovered, a person subject to a state examination must affirmatively assert his or her Fifth Amendment rights.

¶ 25. The State contends that Wis. Stat. § 980.05(1m) does not require that *Miranda* warnings be given for pre-petition psychological evaluations. The State asserts that ch. 980 proceedings are civil in nature; thus, to claim that respondents have the same constitutional protections as those afforded to criminal defendants, pursuant to § 980.05(1m), would be to convert the commitment process into a criminal proceeding and frustrate the entire purpose of ch. 980. The State contends that this proposition was recognized in several Wisconsin cases, including *State v. Carpenter*, 197 Wis. 2d 252, 541 N.W.2d 105 (1995), and in the United States Supreme Court's decision in *Allen*. Moreover, the State asserts that the text of § 980.05(1m) supports the proposition that the constitutional rights afforded to respondents are available only at trial, as every subsection deals with some aspect of the commitment trial.

¶ 26. The State contends that *Zanelli I* is inapposite, as it involved a person's exercise of his right to silence, and did not involve statements made with or without warning. The State further contends that *Zanelli II* applied *Miranda* because the individual made statements in two settings, during a pre-sentence investigation and to investigating detectives, when he was a suspect in a criminal case. Since there is no ongoing criminal investigation here, the State contends that *Zanelli II* is inapplicable.

¶ 27. Finally, the State asserts that, even if this court decides that *Miranda* warnings are required in pre-petition evaluations under Wis. Stat. § 980.05(1m), they were not necessary here because, although Lom-

bard was in custody, he was not interrogated by Jurek. The State contends that, simply because Jurek was required to note if Lombard declined to participate in the interview, it was not a sufficient penalty so that Lombard was compelled or coerced to speak to Jurek.

[9]

¶ 28. We conclude that Wis. Stat. § 980.05(1m) does not require that ch. 980 respondents be given *Miranda* warnings prior to pre-petition interviews with state evaluators.

¶ 29. We believe it is necessary to begin our analysis by discussing the *Miranda* decision in some detail. The *Miranda* decision was in response to what the majority characterized as "the nature and setting of [the] in-custody interrogation . . . ." *Miranda,* 384 U.S. at 445. In its opinion, the United States Supreme Court cited numerous reports, cases, and even law enforcement manuals, which demonstrated that law enforcement tactics used on criminal suspects during custodial interrogation had, in certain instances, resulted in confessions from suspects subjected to physical and psychological coercion. *Id.* at 445–50. The Court noted that while physical tactics are employed less frequently today in the interrogation setting, the modern interrogation focuses on psychologically coercing the suspect to confess. *Id.* at 448. Thus, the Court sought, with its opinion, to alleviate some of the pressures associated with incommunicado interrogation and noted that such tactics were "at odds with one of our Nation's most cherished principles—that the individual may not be compelled to incriminate himself." *Id.* at 457–58.

¶ 30. In *Miranda,* the United States Supreme Court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it

555

demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Id.* at 444. The Court concluded that "there can be no doubt that the Fifth Amendment privilege is available outside of criminal court proceedings and serves to protect persons in all settings in which their freedom of action is curtailed in any significant way from being compelled to incriminate themselves." *Id.* at 467.

¶ 31. The Court devised several safeguards which, when a suspect was informed of these rights, should alleviate the coercive element of custodial interrogation. First, the Court concluded that every suspect should be advised that he or she has the right to remain silent. *Id.* at 467–68. Second, the suspect must be warned that anything he or she does say can and will be used against him or her in court. *Id.* at 469. Finally, the suspect must be informed that he or she has a right to counsel during interrogation and, if indigent, counsel will be appointed. *Id.* at 471–73.

¶ 32. After discussing the appropriate warning suspects should receive prior to interrogation, the Court then proceeded to discuss how a suspect could waive his or her rights under the Fifth Amendment. As an initial matter, the Court noted that if the suspect indicated that he or she wishes to remain silent either prior to or during questioning, such request must be honored and the interrogation must cease. *Id.* at 473–74. The Court stated that while mere silence after the suspect has been warned will not constitute a waiver, an express statement by the suspect that he or she is willing to make a statement and declines an attorney, followed closely by a statement, may be enough to show waiver. *Id.* at 475.

¶ 33. Thirty-four years after *Miranda* was decided, the United States Supreme Court announced

that its decision in *Miranda* was a constitutional rule. In *Dickerson,* the Court concluded that *Miranda* announced a constitutional rule, which could not be superseded by an act of Congress that made admission of incriminating statements at trial turn solely on whether those statements were made voluntarily. *Dickerson,* 530 U.S. at 432. The Court noted that while it has supervisory power over the federal courts, it does not have such power over the states. *Id.* at 438. The Court stated that it had routinely applied *Miranda* to state court cases, and pointed to the fact that the *Miranda* opinion itself stated that the Court granted certiorari in that case, in part, "to give concrete constitutional guidelines for law enforcement agencies and courts to follow." *Id.* at 439 (emphasis omitted)(citation omitted).

¶ 34. Wisconsin courts have had numerous occasions to apply the *Miranda* decision since its issuance. In *State v. La Fernier,* 37 Wis. 2d 365, 375–78, 155 N.W.2d 93 (1967), this court applied the *Miranda* decision to preclude the admission of a suspect's statements to police when an investigator did not give the suspect his *Miranda* warnings, and the suspect confessed to the crime. In *State v. Armstrong,* 223 Wis. 2d 331, 359, 588 N.W.2d 606 (1999), we concluded that the incarcerated suspect was subjected to interrogation "from the moment he became a potential suspect" when the police were questioning him in a prison interview room, concerning the crime of homicide. Because he was not given *Miranda* warnings until after he made his incriminating oral statements, we concluded that the statements made prior to such warnings should be suppressed. *Id.* But we held that the circuit court properly admitted the suspect's written statements because they were voluntary and given after he was

557

properly advised of his *Miranda* rights.[7] *Id.* at 365. More recently, in *State v. Knapp,* 2003 WI 121, 265 Wis. 2d 278, 666 N.W.2d 881, we held that a defendant was entitled to have the physical evidence against him suppressed at trial, because the officer who came to the defendant's home asked the defendant what clothes he had been wearing on the night of the crime in question without first advising the defendant of his *Miranda* rights. The officer intentionally omitted *Miranda* warnings, fearing if he gave them, he would not get the desired evidence. *Id.,* ¶ 73. Certainly, we also have had numerous occasions to interpret and apply the *Miranda* decision in the many cases between the *LaFernier* and *Knapp* cases.

¶ 35. While the discourses on the *Miranda* decision and its implications are voluminous, we provide the brief abovementioned history simply to emphasize our recognition of the importance of the *Miranda* decision and its progeny in guaranteeing that suspects' Fifth Amendment and Article I, § 8 rights will not be rendered ineffectual.

---

[7] At first blush, it may be tempting to liken the circumstances in *State v. Armstrong,* 223 Wis. 2d 331, 359, 588 N.W.2d 606 (1999), to those in the present case and conclude that Lombard was entitled to receive *Miranda* warnings. Unlike the suspect in *Armstrong,* however, Lombard was not a suspect in a criminal investigation. None of the statements Lombard made could subject him to a future criminal prosecution. Lombard had already been convicted and sentenced for the crimes discussed during the evaluation. The examiner's goal was to evaluate Lombard for a civil commitment proceeding, not to determine if he should be charged with a crime and subjected to a criminal prosecution.

¶ 36. In this case, Lombard contends that he was entitled to receive *Miranda* warnings prior to his pre-petition interview with the State evaluator. Although Lombard locates this right as flowing from Wis. Stat. § 980.05(1m), we conclude that the statute does not support such an interpretation. Moreover, we conclude that Lombard's attempt to find support for his arguments in Wisconsin case law misses its mark.

¶ 37. The plain language of Wis. Stat. § 980.05(1m) contains the words "at the trial" at the beginning of the subsection. We agree with the State that, although those words did not begin the sentence referring to constitutional rights, a reasonable interpretation of the plain language of the statute leads to the conclusion that the legislature intended that such constitutional rights would apply at respondent's trial. The context also supports that conclusion. Here, Lombard gave the statements in question during the pre-petition phase of the process. Certainly, there is nothing within § 980.05(1m) to indicate that such constitutional protections must be afforded to potential respondents during the pre-petition phase, well before trial.

¶ 38. This interpretation is bolstered by our decision in *State ex rel. Seibert v. Macht,* 2001 WI 67, ¶ 12, 244 Wis. 2d 378, 627 N.W.2d 881, as revised in *State ex rel. Seibert v. Macht,* 2002 WI 12, ¶ 2, 249 Wis. 2d 702, 639 N.W.2d 707. In *Macht,* we concluded that "[a]n alleged sexually violent person, subject to commitment under Chapter 980, is not a criminal defendant. However, such a person has the same constitutional rights as a criminal defendant *at trial." Macht,* 244 Wis. 2d 378, ¶ 12 (emphasis added). *See also State v. Burris,* 2004 WI 91, ¶ 22, 273 Wis. 2d 294, 682 N.W.2d 812.

559

¶ 39. Moreover, we agree with the court of appeals' harmonization of several applicable cases with the facts of this case. In *Zanelli I,* the defendant appealed from an order that committed him as a sexually violent person. A State evaluator performed a pre-petition evaluation on the respondent based solely on his medical and corrections records, as the respondent chose to exercise his right to silence. *Zanelli I,* 212 Wis. 2d at 364. At the respondent's trial, both the prosecutor and the state evaluator commented on the respondent's choice to remain silent during the evaluation. *Id.* at 369. The court of appeals concluded that the state improperly commented on the respondent's choice to remain silent. *Id.* at 372. The court stated that the Fifth Amendment guarantee against self-incrimination extends to pre-arrest silence and, since Wis. Stat. § 980.05(1m) provides that ch. 980 respondents share the same constitutional rights as criminal defendants, Zanelli possessed a constitutional right to remain silent. *Id.* at 371–72.

¶ 40. While we recognize that *Zanelli I* stands for the proposition that a person subject to a pre-petition evaluation has the right to remain silent pursuant to Wis. Stat. § 980.05(1m), we think that Lombard's claim that *Zanelli I* supports his position that *Miranda* warnings are required prior to a pre-petition interview is too great a stretch. We agree with the court of appeals' conclusion: "It does not necessarily follow, however, that a person who is being evaluated for the potential filing of a ch. 980 petition is entitled to a *Miranda* warning before being interviewed." *Lombard,* 266 Wis. 2d 887, ¶ 26.

¶ 41. Moreover, we agree with the court of appeals' treatment of *Zanelli II. Id.,* ¶¶ 26–28. In *Zanelli II,* the respondent contended that his statements to

probation officers and a police investigator were "compelled by the threat of loss of liberty" and should not have been admitted at the trial. *Zanelli II,* 223 Wis. 2d at 567. The court concluded that the statements to his probation officers were properly admitted, as the statements made were regarding crimes for which he had already been convicted; thus, he was not subject to future criminal prosecutions. *Id.* at 568. With respect to the statements made to the police investigator, the court concluded that he was not entitled to a *Miranda* warning because he could leave the police station whenever he desired and was not in custody for *Miranda* purposes. *Id.* at 571.

¶ 42. We conclude that the reasoning in *Zanelli II,* concerning crimes for which Zanelli had already been convicted, is directly applicable to this case. Here, Lombard was already convicted for the underlying sexual assault offenses that led to his ch. 980 commitment as a sexually violent person. Thus, any statements Lombard made to Jurek regarding those assaults could not be used against him in future prosecutions. We agree with the court of appeals in this case that "(t)he purpose of the examiner's interview was to evaluate Lombard for the purpose of a potential 'civil commitment proceeding, not a criminal proceeding,' and the examiner was not required to comply with *Miranda*'s dictates." *Lombard,* 266 Wis. 2d 887, ¶ 27 (citation omitted).

¶ 43. In *Carpenter,* we rejected the assertion that the primary purpose of ch. 980 was criminal punishment. *Carpenter,* 197 Wis. 2d at 270. In doing so, we drew from the United States Supreme Court's decision in *Allen.* We stated that "the legislature's decision 'to provide some of the safeguards applicable in criminal trials cannot itself turn these proceedings into criminal

prosecutions.' " *Carpenter,* 197 Wis. 2d at 270 (quoting *Allen,* 478 U.S. at 372.). We continue to emphasize that since ch. 980 proceedings are civil in nature, Lombard was not in danger of being subjected to another criminal prosecution.

****

¶ 44. It bears emphasis that, even though Lombard was neither constitutionally nor statutorily entitled to receive *Miranda* warnings, the State evaluator went to great lengths to ensure that Lombard was informed about the pre-petition evaluation process. In fact, Jurek stated that nearly the entire first day of the three-day evaluation was spent educating Lombard about the ch. 980 process, including the pre-petition evaluation that Jurek would be conducting. Jurek testified about how he acclimates a person to the pre-petition evaluation process:

> There is an initial introduction where I tell the person hello, here is who I am, here is what I'm here to do, and enter into a discussion with them asking them what do you know about Chapter 980, what have you heard, what is your understanding of the process, and after that kind of discussion that they know what this is all about and what my role is and what I'm going to be doing, looking at the records, giving them an MMPI[8] and then having an interview with them.

> The next step is to introduce the idea that this is voluntary, that this is something they can do or they can choose not to do. I emphasize they are able to participate in the entire process, that they can decide

---

[8] The MMPI, or Minnesota Multiphasic Personality Inventory, is an objective psychological test designed to reveal any psychopathologies or personality disorders that a subject may possess. The most recent version of the MMPI was introduced in 1989 and is referred to as the MMPI-2.

not to participate at any point, they can change their mind, that if they don't want to do the MMPI, in particular, they can refuse to do that portion. If there are any questions that are asked that they don't want to answer, they can refuse to answer specific questions. And then the third thing that happens is the form is introduced and then I literally read what is in the form.

¶ 45. Jurek further testified that Lombard indicated that he "was willing to participate and was willing to share whatever information he could." Thus, we feel that even though Lombard was not entitled to a *Miranda* warning, the State evaluator attempted to create an environment where Lombard understood that it was entirely his choice to decide if he wanted to participate in the interview.[9] Under such circumstances, there was no coercion.

### III

¶ 46. We next address Lombard's claim that he received ineffective assistance of counsel at trial. Ineffective assistance of counsel claims present a mixed question of fact and law. *State v. Trawitzki,* 2001 WI 77, ¶ 19, 244 Wis. 2d 523, 628 N.W.2d 801 (citing *State v. Johnson,* 153 Wis. 2d 121, 127–28, 449 N.W.2d 845 (1990)). The circuit court's findings of fact are upheld unless clearly erroneous. *Id.* The issue of whether counsel's performance was ineffective is a question of law that we review de novo. *Id.*

---

[9] Although Lombard claims that he felt compelled to speak because his failure to do so could be used against him, Jurek periodically reminded Lombard that it was his decision whether he wanted to participate in the evaluation. Lombard explicitly stated that he was willing to continue the evaluation and also continued to respond to Jurek's questions.

¶ 47. Lombard contends that because his counsel failed to challenge the use of Lombard's statements at trial until after the jury verdict, his counsel's performance fell below the range of competence. Lombard asserts that, had this been a criminal case, this court would easily have concluded that counsel's performance was ineffective. Lombard claims that without Jurek's testimony that Lombard made certain statements to him at the interview, and without Jurek's use of Lombard's statements to reach his conclusions, there was insufficient evidence to prove that Lombard was a sexually violent person. Thus, had the statements not been admitted, Lombard contends that the outcome certainly would have been different.

¶ 48. The State asserts that Lombard cannot establish that he received ineffective assistance of counsel. Since the State contends that *Miranda* warnings are either inapplicable or not required in this scenario, it argues that Lombard's counsel was not deficient for failing to object to the admission of Lombard's statements at trial. The State further contends that Lombard cannot establish that he was prejudiced by counsel's failure to object because, even without a diagnosis of sexual sadism, a diagnosis of paraphilia not otherwise specified is enough to support a mental disorder that requires commitment under ch. 980. The State asserts that the jury could also look at the fact that Lombard committed eight sexual assaults in 20 months. Moreover, the State contends that the evidence would have likely come before the jury even if Lombard's counsel had objected to its admission, because the State could use such evidence to impeach his testimony that the victim's suffering did not sexually excite him. More specifically, Lombard told Jurek during his evaluation that, during the last sexual assault he

committed before going to prison, he threatened the victim with a knife, struck her numerous times, and became enraged when she passed out during the assault.

■

¶ 49. In order to demonstrate ineffective assistance of counsel, two prongs must be satisfied. First, a defendant must show that counsel's performance was deficient. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). The errors contemplated under this standard must be so egregious that the attorney was not functioning as the defendant's counsel as guaranteed by the Sixth Amendment. *Johnson,* 153 Wis. 2d at 127. In evaluating ineffective assistance of counsel claims, the burden is on the defendant to demonstrate such deficient performance, and the court gives considerable deference to the decisions made by counsel. *Strickland,* 466 U.S. at 688–89. Second, the defendant must demonstrate that such deficient performance prejudiced his or her defense. *Id.* at 692. In order to satisfy this prong, counsel's errors must be so serious that, as a result of such errors, the defendant was deprived of a fair, reliable trial. *Johnson,* 153 Wis. 2d at 127. More specifically, the defendant must show that, but for counsel's errors, the outcome of the trial would have been different. *Strickland,* 466 U.S. at 694.

■

¶ 50. Because we earlier concluded that persons subject to ch. 980 pre-petition evaluations do not have a right to receive *Miranda* warnings, we must now conclude that Lombard's counsel did not render a deficient performance by failing to object to the admission of Lombard's pre-petition evaluation statements at trial. The United States Supreme Court has stated that when an ineffective assistance of counsel claim may be re-

solved on one prong, courts need not discuss, in every case, both counsel's performance and prejudice to the defendant. *Id.* at 697. However, we also agree with the court of appeals' conclusion that Lombard suffered no prejudice as a result of his counsel's failure to object to the psychologist's testimony. Because Lombard was not entitled to such *Miranda* warnings, he could not have been prejudiced by his counsel's failure to object to the admission of his testimony on grounds that his *Miranda* rights had been violated.[10]

## IV

¶ 51. In summary, we conclude that Lombard was not entitled to *Miranda* warnings prior to his pre-petition evaluation with the State's psychologist in regard to whether a ch. 980 petition should be filed. Wisconsin Stat. § 980.05(1m) plainly contains the language "at the trial." The plain language of the statute leads to the conclusion that the legislature intended that such constitutional rights would apply at Lombard's ch. 980 trial. Thus, since the constitutional rights referred to are those within the trial context, Lombard did not have the right to *Miranda* warnings during his pre-petition interview with the State psychologist. Because Lombard was not entitled to the warnings, we conclude that counsel's performance was not deficient, and Lombard's claim for ineffective assistance of counsel fails.

*By the Court.*—The decision of the court of appeals is affirmed.

---

[10] We strongly disagree with the dissent that counsel's performance was ineffective. *See* dissent, ¶ 78. We also strongly disagree with the dissent, for the reasons noted, that counsel's performance was prejudicial per se. *Id.*

¶ 52. DIANE S. SYKES, J., did not participate.

¶ 53. SHIRLEY S. ABRAHAMSON, C.J. (*dissenting*). I conclude that ch. 980 individuals are entitled to be advised at the pre-petition examination (1) that they have the right to remain silent, and (2) that their silence will not be used against then at any stage of the ch. 980 commitment proceeding.

¶ 54. Lombard was advised that he had the right to remain silent (that is, that he had the right not to participate in the examination). He was not advised that his silence could not be used against him. I therefore conclude that the state psychologist should not have been allowed to testify to the conclusions he reached based on Lombard's statements. Even more startling and prejudicial in the present case is that the psychologist incorrectly advised Lombard that his refusal to answer would be used as part of the evaluation and could be repeated in testimony at trial.

¶ 55. I conclude that Lombard should prevail on his ineffective assistance of counsel claim. Lombard should get a new trial on the issue of his ch. 980 commitment.

¶ 56. The parties and the majority opinion frame the issue as involving *Miranda*[1] rights because at issue in the present case is the right of an individual in custody to remain silent and the right of the individual to be advised that the State may not use his or her silence or statements in subsequent proceedings. These rights are derived from the *Miranda* case and other cases. The present case does not involve any other "*Miranda*-like" right.

¶ 57. This is a ch. 980 commitment case. The prospective ch. 980 individual has statutory rights (as

---

[1] *Miranda v. Arizona,* 384 U.S. 436 (1966).

well as constitutional rights). The statute in issue, Wis. Stat. § 980.05(1m), provides that "all constitutional rights available to a defendant in a criminal proceeding are available to the person."

¶ 58. As the majority recognizes, this case raises the following three issues:

 A. Does a prospective ch. 980 individual have the right to remain silent in a pre-petition examination?

 B. May a prospective ch. 980 individual's silence during a pre-petition examination be used against him or her at trial? and

 C. Is the State required to advise a prospective ch. 980 individual at the beginning of the pre-petition examination about the right to remain silent and that silence cannot be used against the individual?

¶ 59. I decide each of these issues as follows:

¶ 60 **A.** I agree with the majority opinion that a prospective ch. 980 individual has a right to remain silent at the pre-petition examination pursuant to Wis. Stat. § 980.05(1m).[2] *Zanelli I* established this right.[3] The majority opinion adheres to *Zanelli I.*

---

[2] Majority op., ¶ 39.

[3] *State v. Zanelli*, 212 Wis. 2d 358, 372, 569 N.W.2d 301 (Ct. App. 1997) (*Zanelli I*).

 *Zanelli I* protects the respondent's right to silence at the ch. 980 trial, and bars testimony about or reference to the individual's silence during or before the trial. At the ch. 980 trial in *Zanelli I* both the prosecutor and the psychologist commented on Zanelli's silence during a pre-petition interview. *Zanelli I*, 212 Wis. 2d at 369. Zanelli argued that by commenting on his silence the State violated his constitutional right to remain silent. *Zanelli I*, 212 Wis. 2d at 370. The court of appeals concluded that when a witness and the prosecutor commented on Zanelli's silence, they violated

¶ 61. **B.** I agree with the majority opinion that a prospective ch. 980 individual's silence during a pre-petition examination may not be used against the individual during trial.[4]

¶ 62. This case does not involve silence. Lombard spoke. The State used Lombard's speech against him at trial.

¶ 63. **C.** I disagree with the majority opinion that a prospective ch. 980 individual need not be advised that he or she has a right to remain silent and that his or her silence will not be used against him or her at trial.[5] I discuss this aspect of the case below.

---

the rule of *State v. Fencl,* 109 Wis. 2d 224, 325 N.W.2d 703 (1982), made applicable to Zanelli by virtue of § 980.05(1m). *Zanelli I,* 212 Wis. 2d at 372.

[4] Majority op., ¶ 39; *Zanelli I,* 212 Wis. 2d at 371–72.

[5] I confess that I find it difficult to follow the reasoning of the majority opinion, much of which seems more applicable to the first two issues rather than this third issue.

The majority opinion seems to rely on the "constitutional rights" granted by Wis. Stat. § 980.05(1m) as being limited to the trial. Section 980.05(1m) provides in full as follows: "At the trial to determine whether the person who is the subject of a petition under § 980.02 is a sexually violent person, all rules of evidence in criminal actions apply. All constitutional rights available to a defendant in a criminal proceeding are available to the person."

The first sentence of the provision refers to trial and evidence. Evidence is a trial matter. The second sentence does not refer to trial. It addresses all constitutional rights in a "criminal proceeding." Constitutional rights arise before, during, and after trial. Thus the words "criminal proceeding" denote more than rights at trial. To read the words "at the trial" from the first sentence into the second sentence conflicts with the words "criminal proceeding" in the second sentence.

Reading Wis. Stat. § 980.05(1m) as limited to trials appears to make it redundant. Wisconsin Stat. § 980.03 (2)(b) states the rights of a prospective ch. 980 individual, including the right to

I

¶ 64. As I see it, implicit in the legislature's grant of the right to remain silent (a constitutional right of a criminal defendant) is the individual's right to be advised of the right to remain silent. If an individual does not know of the right, the individual's right to pre-petition silence is meaningless. "[I]f a person in custody is to be subjected to questioning, 'he must first be informed in clear and unequivocal terms that he has the right to remain silent,' so the ignorant may learn of this right and so that the pressures of the interrogation atmosphere will be overcome for those previously aware of the right."[6]

---

remain silent, at all hearings. Therefore § 980.05(1m) must provide more than simply a right to silence at trial.

The majority opinion relies on *State ex rel. Seibert v. Macht,* 2001 WI 67, ¶ 12, 244 Wis. 2d 378, 627 N.W.2d 881, *as revised by* 2002 WI 12, ¶ 2, 249 Wis. 2d 702, 639 N.W.2d 707, to support its interpretation of Wis. Stat. § 980.05(1m). In a motion for reconsideration in that case, the State asked the court to amend its decision because "the last sentence in § 980.05(1m) may, *but need not,* be interpreted as applicable only to trial." The State requested the court to refrain from defining the scope of § 980.05(1m) without discussing all the possible interpretations of the section and explaining why one interpretation is preferred.

The court in *Macht* did not heed the state's warning and did not explain why it added the words "at trial." The case at bar is the first case in which it has the opportunity to examine the statute closely and it does not.

In other cases this court has treated Wis. Stat. § 980.05(1m) as applying throughout the ch. 980 proceeding. *See State v. Sorenson,* 2002 WI 78, ¶ 19, 254 Wis. 2d 54, 646 N.W.2d 354; *State v. Thiel,* 2001 WI App 32, ¶ 15, 241 Wis. 2d 465, 626 N.W.2d 787.

[6] 2 Wayne R. LaFave et al., *Criminal Procedure* § 6.5(b), at 509 (2d ed. 1999) (quoting *Miranda v. Arizona,* 384 U.S. 436 (1966)).

¶ 65. The State "may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation . . . unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination."[7] Unless procedural safeguards to inform the person of his or her right of silence and a continued opportunity to exercise it are in place, "no statement obtained . . . can truly be the product of [the person's] free choice."[8] In sum, "the privilege [against self-incrimination] is fulfilled only when the person is guaranteed the right 'to remain silent unless he chooses to speak in the unfettered exercise of his own will.' "[9]

¶ 66. Fundamental fairness and protection of the privilege against self-incrimination require a pre-examination warning of the right to remain silent. The potential ch. 980 individual is in custody.[10] The interview is conducted in prison by a psychologist acting on behalf of the state. The interview is mandatory. The prisoner's freedom, his liberty interest, is on the line. Although a ch. 980 individual's potentially-for-life commitment is not, according to the legislature and this court, punishment for past criminal sexual conduct, but rather is treatment, the individual will feel compelled to speak unless advised that his silence will not be used against him.

---

[7] *Miranda v. Arizona*, 384 U.S. 436, 444 (1966).

[8] *Miranda*, 384 U.S. at 458.

[9] *Miranda*, 384 U.S. at 460 (quoting *Malloy v. Hogan*, 378 U.S. 1, 8 (1964)). *See also Fencl*, 109 Wis. 2d at 236.

[10] *See State v. Armstrong*, 223 Wis. 2d 331, 355, 588 N.W.2d 606 (1999) (persons incarcerated are per se in custody).

¶ 67. Without a warning that the individual can remain silent and that this silence cannot be used against the individual, the individual's free choice is eviscerated; compulsion is inherent in the circumstances. Without advice about the right to remain silent the prospective ch. 980 individual cannot make a free and deliberate choice whether to exercise his statutory (a criminal defendant's constitutional) right to remain silent.

¶ 68. Relinquishment of a statutory right to remain silent (which is, according to the statute, comparable to a criminal accused's relinquishment of the constitutional right to remain silent) should be the product of free choice rather than the result of intimidation, coercion, or deception. A valid waiver of a right to remain silent must be made with the awareness of both the right being abandoned and the consequences of the decision to abandon that right.[11] This rule safeguards the privilege of self-incrimination, regardless of whether the individual will incriminate himself.[12]

¶ 69. This interpretation of Wis. Stat. § 980.05(1m) is supported by Wis. Stat. § 51.20(9)(a)4., which specifies that prior to examination for civil commitment the individual shall be informed that his or statements can be used as a basis for commitment and that he or she has the right to remain silent. The issuance of such a warning establishes, by statute, a presumption that the individual understands that he or she need not speak to the examiner.

¶ 70. This interpretation of Wis. Stat. § 980.05(1m) is further supported by *Allen v. Illinois,*

---

[11] *See Miranda,* 384 U.S. at 460.

[12] *Id.* at 444.

478 U.S. 364 (1986). In *Allen* the court held that admissions obtained in an Illinois sexually-dangerous proceeding without Miranda warnings were properly received. The court's conclusion was grounded on the civil label (although the label is not determinative) and the civil attributes of the statute and the fact that "[i]n short, the State has disavowed any interest in punishment, provided for the treatment of those it commits, and *established a system under which committed persons may be released after the briefest time in confinement.*"[13] Release "after the briefest of time in confinement" are not words that can be used to describe ch. 980 or the practice thereunder. Wisconsin's ch. 980 committees have waited years before they were released on supervised release even though a court declared them eligible for such release. Thus one of the major grounds underlying the *Allen* majority is missing in the present case, and therefore the majority opinion in *Allen* does not, in my opinion, support the majority opinion in the present case.

¶ 71. I conclude, as did the four dissenters in *Allen,* that the criminal law "casts so long a shadow on a putatively civil proceeding . . . that the procedure must be deemed a 'criminal case' within the meaning of the Fifth Amendment"[14] and the *Miranda* warnings about silence must be given. Chapter 980 relies heavily on the criminal justice system: The proceedings are triggered by a criminal conviction; the proceedings are prosecuted by the state; the burden of proof is that applicable to the criminal law; the constitutional rights of a criminal defendant apply; the consequences of the proceedings are institutionalization for an indefinite

[13] *Allen v. Illinois,* 478 U.S. 364, 370 (1986).

[14] *Id.* at 376 (Stevens, J., dissenting).

time, possibly life. Justice Stevens in his dissent wrote: "In my opinion, permitting a State to create a shadow criminal law without the fundamental protection of the Fifth Amendment conflicts with the respect for liberty and individual dignity that has long characterized, and that continues to characterize, our free society."[15]

## II

¶ 72. Even if a ch. 980 individual does not have a right to be warned that he or she has a right to remain silent and that silence cannot be used against him or her at any stage of the ch. 980 proceeding, as the majority opinion holds, an incorrect and misleading warning is unacceptable. And that's what happened in this case.

¶ 73. The majority opinion emphasizes that the state psychologist "went to great lengths to ensure that Lombard was informed about the pre-petition evaluation process,"[16] and that "Lombard understood that it was entirely his choice to decide if he wanted to participate . . . ."[17] Yet the majority opinion ignores the fact that the psychologist misstated the law about the use to which Lombard's silence may be put and thus misled Lombard.

¶ 74. The psychologist advised Lombard that his silence will be used as part of his evaluation. This information was erroneous. The new form the State supplied the court correctly explains that the indivi-

---

[15] *Id.* at 384 (Stevens, J., dissenting).

[16] Majority op., ¶ 44.

[17] *Id.,* ¶ 45.

dual's decision regarding participation in the interview "cannot be used against [the individual]."[18]

¶ 75. The psychologist also advised Lombard that "nothing during the evaluation will be confidential and may be repeated in testimony or written response."[19] The psychologist thus advised Lombard that even Lombard's silence during the evaluation would not be confidential. This information too was erroneous. The new form the State supplied the court correctly explains that "nothing *said* during the evaluation would be confidential."[20]

¶ 76. It is one thing for the State not to advise a prospective ch. 980 individual about his right to remain silent and about the use to which the silence may (or may not) be put. It is another thing for the State to give the individual erroneous advice and then use the information the State obtains through this erroneous advice against the individual.

¶ 77. This case can be boiled down to these important facts: Lombard was not advised of his statutory right to remain silent. In fact, Lombard received erroneous advice, advice contrary to the law of Wisconsin: He was advised that his silence *would* be used against him. The State thus misled Lombard into speaking. The state's misleading Lombard was, in my opinion, prejudicial error.

¶ 78. I conclude that counsel should have, at a minimum, objected to the psychologist's testimony on the ground that Lombard was incorrectly advised about his right to remain silent, that this incorrect advice was

[18] *Id.*, ¶ 4 n.4.

[19] The full written form Lombard signed, including these statements, appears in the majority opinion, ¶ 4.

[20] Majority op., ¶ 4 n.4 (emphasis added).

misleading, and that Lombard's agreement to participate in the examination based on this erroneous advice was invalid as a matter of law. Trial counsel's failure to object to the psychologist's testimony was, I conclude, ineffective assistance of counsel and prejudicial per se.

¶ 79. As a result of the majority opinion, a state agent (the psychologist) is free to mislead a prospective ch. 980 individual to believe that his silence at the pre-petition examination can be used against him and thus induce the individual to speak. I dissent.

¶ 80. I am authorized to state that Justice ANN WALSH BRADLEY joins this opinion.